UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
STEVEN FRIEDMAN,

        Plaintiff,      19-cv-226 (PKC)

  -against-          OPINION
                AND ORDER

STACEY LIPPMAN, CHIAT-DAY HOLDINGS INC.
EMPLOYEE PROFIT SHARING AND 401(K) PLAN,
a/k/a CHIAT-DAY HOLDINGS INC. PROFIT SHARING
PLAN, and TBWA WORLDWIDE INC.,

        Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

    Plaintiff Steven Friedman left the employ of an advertising agency, Chiat\Day, in 1993. Chiat\Day ceased doing business in or about 1995 when its assets were purchased by defendant TBWA Worldwide Inc. ("TBWA"). Friedman had been a participant in Chiat/Day Holdings Inc.'s Employee Profit Sharing and 401(k) Plan (the "Plan"), and in 1995 the Plan made a filing with the Internal Revenue Service ("IRS") indicating that the Plan had been terminated but its assets had not yet been distributed. In an IRS filing the following year, the Plan stated that all assets had been distributed. As pled in his Complaint, "Friedman has no record of ever receiving any distributions under the Plan and to the best of his knowledge, based upon review of his financial records, he never received any such distributions." (Compl. (Doc 1) ¶ 33.)

    Friedman brought this action pursuant to section 502(a)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA,") 29 U.S.C. § 1132(a)(1), alleging that he is owed $164,920 in unpaid benefits from the Plan. (Doc 1 ¶¶ 1-4.) The parties agree that the Plan

no longer exists: it "has been liquidated and dissolved and is no longer a valid and subsisting juridical entity."  (Doc 68; Pl. Mem. Law Opp'n (Doc 79) at 5.)

Friedman sued multiple defendants to recover the benefits he asserts he is owed: Colette Chestnut, then-Chief Financial Officer ("CFO") of TBWA, in her representative capacity; the Plan itself; TBWA; National Union Fire Insurance Company of Pittsburgh, PA, which allegedly provided insurance to the Plan; and Plan trustees Michael Kooper and Stacey Lippman.  Defendants Chestnut, Lippman, the Plan, and National Union Fire Insurance were voluntarily dismissed from this action.  (Docs 42, 48, 68.)  The Court dismissed defendant Kooper after it concluded that Kooper could not be held liable in his individual capacity.  (Opinion & Order of Nov. 8, 2019 (Doc 63).)

The Court adopted in substantial part the parties' Case Management Plan and entered a Scheduling Order with all discovery ending on December 18, 2019.  (Doc 53.)  Sole remaining defendant TBWA now moves for summary judgment pursuant to Rule 56, Fed. R. Civ. P.  (Doc 74.)  For the reasons set forth below, TBWA's motion will be granted.

BACKGROUND

   A. Relevant Facts

Unless otherwise noted, the facts herein are undisputed.  Friedman worked for Chiat\Day from 1985 until 1993. (Def. Local Rule 56.1 Statement ("Def. 56.1") ¶ 1.)[1]  Friedman was laid off in late 1993, and his employment at Chiat\Day ended in or around November 1993. (Id. ¶ 2.)  While an employee there, Friedman participated in the Chiat/Day Holdings Inc. Employee Profit Sharing and 401(k) Plan (the "Plan").  (Id. ¶ 3.)

---

[1] Citations to the parties' Rule 56.1 Statements are to the evidence cited in the Statements, unless otherwise noted. These and all other citations to evidence are for illustrative purposes and are not intended as the sole support for a proposition.

On May 11, 1995, Chiat/Day Holdings and its subsidiary, Chiat\Day Inc. Advertising, entered into an Asset Purchase Agreement with TBWA and Omnicom Group Inc. ("Omnicom") (the "Transaction"). (Id. ¶ 4.) TBWA is a wholly-owned subsidiary of Omnicom. (Greenberg Decl. (Doc 75), Ex. 3 (APA) at 1.) The Asset Purchase Agreement ("APA") defines TBWA as the "Purchaser." (Id.)

The express terms of the APA provided that TBWA did not assume "any liability or obligation of [Chiat\Day] with respect to any plan, policy, arrangement or agreement providing employment benefits or compensation to employees" or "any liability or obligation under the Profit Sharing Plan Purchase Agreement . . . ." (APA ¶¶ 1.1.4(iii) and (x).) The Profit Sharing Plan Purchase Agreement ("PSPPA"), dated May 9, 1995, was entered into by Chiat\Day Holdings, Inc. (referred to in the PSPPA as the "Company") and Michael Kooper as trustee of the Plan (referred to in the PSPPA as the "Trustee"). (Doc 75, Ex. 4 (PSPPA).) The PSPPA provided, in relevant part: "TBWA is not willing to assume liabilities related to the Chiat/Day Profit Sharing and 401(k) Plan . . . and assets of the Plan will not be transferred to a plan sponsored by TBWA in connection with the Transaction . . . . The Plan shall be terminated by the Company at its expense as of the Closing Date, and all Plan assets will be distributed as soon as practicable thereafter." (PSPPA at 1; ¶ 1(e).) On August 7, 1995, the Chiat\Day Board of Directors adopted a resolution authorizing the termination of the Profit Sharing Plan by or before the Closing Date of the Transaction. (Doc 75, Ex. 5.) The Transaction closed on August 31, 1995. (Doc 75, Ex. 6.)

Friedman does not dispute the terms of the APA, but, in opposition to this motion, asserts that the Transaction was "a de facto merger and the continuation of the business of Chiat\Day and not an asset acquisition." (Pl. Local Rule 56.1 Statement ("Pl. 56.1") ¶¶ 4-10;

12.) In alleging that TBWA is the Plan administrator, he effectively alleges that TBWA is the successor of Chiat\Day as Plan administrator. However, in his single-count Complaint, Friedman does not allege any claim of breach of fiduciary duty or employer liability for failure to fund the Plan. (See Doc 1.)

IRS Annual Return/Report of Employee Benefit Plan Forms 5500 were filed for the Plan in 1995, covering Plan year ending October 1996, and in 1996, covering Plan year ending July 1997. (Michael Gordon Decl. (Doc 78), Exs. 9-10.) The 1995 Form 5500 lists Collette Chestnut, then-CFO of TBWA, as the person who would be "signing for the employer/plan sponsor" and as the individual "signing for the plan administrator." (Doc 78, Ex. 9.) While Chestnut's name is printed, her signature does not appear on the Form. (Id.) The 1995 Form 5500 lists two Plan trustees: "Michael Kooper CO TBWA Chiat Day" and "Stacey Lippman CO TBWA Chiat Day." (Id.) The 1996 Form 5500 does not list any individual signing for the employer/plan sponsor or plan administrator, nor does it contain any signature. (Doc 78, Ex. 10.) Michael Kooper and Stacey Lippman are also listed on the 1996 Form as Plan trustees. (Id.)

The 1995 Form 5500 reflects that the Plan was terminated in 1995, but that the Plan assets had not been distributed or otherwise transferred. (Doc 78, Ex. 9.) The 1996 Form 5500, however, reflects that "all the plan assets [were] either distributed to participants or beneficiaries, transferred to another plan, or brought under the control of [Pension Benefit Guaranty Corporation]." (Doc 78, Ex. 10.) Both Forms reflect that the filer "received a favorable determination letter from the IRS for the termination" and that "participants and beneficiaries [have] been notified of the termination or the proposed termination." (Doc 78, Exs. 9-10.)

In December 2016, Friedman received a notice from the Social Security Administration, advising him that he "MAY be entitled to some retirement benefits" from the Plan, and that these benefits were valued at $164,920.  (Def. 56.1 ¶ 14; Doc 75, Ex. 8.)  TBWA does not know whether Friedman received the benefits he alleges he is still owed under the Plan.  (Pl. 56.1 ¶ 25.)  Records of Bessemer Trust Company ("Bessemer") confirm that in February 1998, Friedman opened an IRA account and transferred unspecified assets in unspecified amounts from a Smith Barney IRA account to Bessemer.  (Doc 78, Ex. 4 at 9.)  Friedman's submission also contains a largely illegible Smith Barney IRA account statement as of September 1997 that does not show the original source of the assets in that account.  (Doc 78, Ex. 5.)  No document submitted on this motion proves or disproves Friedman's receipt of funds from the Plan either at the time of his 1993 departure from Chiat\Day or the 1995-1996 liquidation of the Plan.  Friedman stated at his deposition that he does not have financial records dating back to the time period in question, and that he "doubt[s]," but "[has] no idea" whether financial records from the 1995-1996 time period would reflect his receipt of a distribution from the Plan.  (Doc 78, Ex. 2 at 211.)

SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  A fact is material if it "might affect the outcome of the suit under the governing law . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248).  On a motion for summary judgment, the Court

must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation marks and citation omitted).

It is the initial burden of the movant to come forward with evidence on each material element of his claim or defense sufficient to entitle the movant to relief as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Simsbury-Avon Preservation Club, Inc. v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009) (internal citations omitted).

Further, a district court "must ask not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Simpson v. City of N.Y., 793 F.3d 259, 265 (2d Cir. 2015) (internal quotation marks and citation omitted). It is not appropriate for the Court to make credibility assessments or resolve conflicting versions of events; these are essential questions for a jury. Id.; Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996) (courts do not "weigh the evidence" when deciding a summary judgment motion).

DISCUSSION

TBWA's motion is premised on the proposition that the single claim asserted by Freidman, a claim for plan benefits against a plan administrator in its capacity as such, may only reach the assets of the Plan, of which Friedman concedes there are none. Friedman's Complaint asserts no claim of breach of fiduciary, no claim of successor liability or alter ego status, and no claim under any other theory of liability.

The Complaint asserts one claim for relief under section 502(a)(1), 29 U.S.C. §1132(a)(1), that entitles a beneficiary to sue for unpaid plan benefits. The claim is asserted against TBWA, as Plan "Administrator." (Doc 1 ¶¶ 13, 54.) Friedman does not dispute that he has only sued TBWA in this capacity: "Here . . . Freidman seeks to hold TBWA liable in its capacity as an administrator." (Doc 79 at 20.) A fair reading of the claim is that "[t]he Plan was obligated by its terms and provisions to make a distribution of benefits to Freidman" and that "Friedman has never received any benefits under the Plan . . . ." (Doc 1 ¶¶ 53, 57.) As relief, Friedman seeks $164,920 in benefits he claims to be owed, plus interest, attorneys' fees, and costs. (Id. ¶ 59.)

As one might find in a contract-type claim, there are no allegations of either mens rea or culpable conduct beyond non-performance of an obligation, and none is required under section 502(a)(1). The section provides that a beneficiary of a plan may recover benefits due under the terms of his plan. 29 U.S.C. §1132(a)(1). Thus, Freidman, a beneficiary of the Plan, may sue TBWA as Plan administrator to recover the $164,920 in benefits he alleges that he is due under the Plan. For purposes of this action, it suffices to note that a plan may be sued by serving the administrator of the plan. 29 U.S.C. §1132(d)(1) ("Service of summons, subpoena, or

other legal process of a court upon a trustee or an administrator of an employee benefit plan in his capacity as such shall constitute service upon the employee benefit plan.").

TBWA disputes the factual assertion that it has ever been an "administrator" of the Plan or had any relationship or association of any kind with the Plan. But for the purpose of this motion, it accepts the truth of Friedman's allegation and accepts, as it must, that a plan administrator may be named on a claim for benefits under section 502(a)(1).

Friedman places considerable reliance upon cases that address who may be properly sued on a claim for benefits under section 502(a)(1). See N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp., 798 F.3d 125, 132 (2d Cir. 2015) (claims administrator properly named under section 502(a)(1)(B)); Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 509-10 (2d Cir. 2002) (finding plan to be proper defendant on section 502(a)(1)(B) claim). But, as noted, TBWA's motion does not assert that it has been improperly named on Friedman's section 502(a)(1) claim. The cases to which Friedman points are not dispositive of the issue raised by TBWA's motion.

A. <u>TBWA Cannot be Compelled to Pay Friedman from Its Own Assets</u>

The central focus of this motion is the limitation on recovery in section 502(d)(2) of ERISA. TBWA argues that any liability of an administrator sued in that capacity for non-payment of plan benefits can only reach the assets of the plan. Section 502(d)(2) provides:

> Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter.

29 U.S.C. § 1132(d)(2). The statute limits recovery against the plan to the "plan as an entity," unless there is a claim against "any other person" in that person's "individual capacity." This

limitation has been enforced by the Second Circuit in Leonelli v. Pennwalt Corp., 887 F.2d 1195 (2d Cir. 1989).  For reasons not relevant here, the Court of Appeals concluded that the individual defendants were not fiduciaries and could not be sued as such.  Id. at 1199.  It followed from that conclusion that the individuals could not be sued for plan benefits:

> [T]he proposed amended cause of action under ERISA's civil enforcement provision, § 1132(a)(1)(B), for failure to pay benefits due under the Pension Plan would be barred by plaintiff's failure to name the Pension Administrative Committee as a defendant. In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable.

Id.; see also Chapman, 288 F.3d at 509-10 (quoting Leonelli).

Courts in this District have repeatedly held that only the benefit plan at issue "is liable for the payment of benefits under ERISA."  Greater Blouse, Skirt & Undergarment Ass'n, Inc. v. Morris, No. 93 Civ. 1257, 1996 WL 325595, at *3 (S.D.N.Y. June 12, 1996) (Sotomayor, J.); see also Manginaro v. Welfare Fund of Local 771, I.A.T.S.E., 21 F. Supp. 2d 284, 301 (S.D.N.Y. 1998) (rejecting plaintiffs' contention that plan trustees could be "held personally liable if the Fund's assets prove insufficient to satisfy its liability").[2]  In Greater Blouse, after trial, the parties disputed which party (or parties) would be liable for payment of pension benefits.  As plan administrator, Greater Blouse argued that it could not be held liable for benefits from its own corporate assets.  Then-District Judge Sotomayor agreed, concluding that "ERISA [] does not require the plan administrator personally to pay pension benefits, which are uniquely the Plan's obligation."  Greater Blouse, 1996 WL 325595, at *4; Stevenson v. Tyco Int'l (US) Inc. Supplemental Exec. Ret. Plan, No. 04-CV-4037 (KMK), 2006 WL 2827635, at *3 (S.D.N.Y. Sept. 29, 2006) (quoting Greater Blouse: "The plan administrator is

---

[2] But see Levy v. Young Adult Institute, Inc., No. 13 cv 2861 (JPO) (SN), 2014 WL 6611454, at *6 (S.D.N.Y. Nov. 21, 2014), which this Court reads as limited to the particularities of the plan at issue in that case, which was funded only as needed by the employer-sponsor.

not personally liable for the unpaid benefits—payment of benefits is 'uniquely the Plan's obligation.'").

In dismissing a claim against a non-administrator for plan benefits, then-District Judge Sullivan, citing Leonelli and Chapman, succinctly summarized the principles that control this case:

> 'In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable.'. . . Under ERISA, the Plan 'administrator' is 'the person specifically so designated by the terms of the instrument under which the plan is operated . . . .' 29 U.S.C. § 1002(16)(A)(i). 'Any money judgment . . . against an employee benefit plan shall be enforceable only against the plan as an entity.' Id. at § 1132(d)(2).

Schnur v. CTC Commc'ns Corp. Grp. Disability Plan, 621 F. Supp. 2d 96, 106 (S.D.N.Y. 2008) (citations omitted).

As section 502(d)(2) recognizes, a plan beneficiary is free to assert a claim against "any other person," including a plan administrator in its individual capacity, on a claim brought under some other provision of ERISA. 29 U.S.C. § 1132(d)(2) (". . . unless liability against such person is established in his individual capacity under this subchapter."). For example, if, in breach of its fiduciary, a plan administrator squanders the assets of a plan and the plan is unable to pay benefits, the plan administrator may be sued in its individual capacity and may be liable for the breach; the remedy would be to make good the losses to the plan. 29 U.S.C. § 1109(a) ("Any person who is a fiduciary with respect to a plan who breaches any of the . . . duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses to the plan resulting from each such breach").

But Friedman's claim against TBWA, who he identifies as the "Plan Administrator" (Doc 1 ¶ 13), accuses TBWA of no breach of fiduciary duty and his counsel

- 10 -

expressly conceded that he does not bring any such claim here. (Pl. Letter of Feb. 25, 2019 (Doc 34)) ("Plaintiff does not plead a claim for breach of fiduciary duty under 29 U.S.C. §1109."). It is unsurprising that Friedman has refrained from suing TBWA in its individual capacity for breach of fiduciary duty because such a claim would likely be barred by ERISA's statute of limitations. 29 U.S.C. §1113.[3]

Strategically, Freidman has chosen to sue TBWA only in its capacity as administrator and only under section 502(a)(1) of ERISA. Framed in this limited manner, TBWA cannot be held liable to pay Plan benefits to Freidman out of its own corporate assets.

B. Friedman's Proposed End-Run Around Section 502(d)(2) Does Not Save His Claim

In some circumstances, a beneficiary may bring an action under ERISA to impose successor or alter ego liability on a "new" employer where the beneficiary asserts the "old" employer failed to properly fund a benefit plan or the "new" employer has an on-going obligation to do so. See, e.g., Ret. Plan of UNITE HERE Nat. Ret. Fund v. Kombassan Holding A.S., 629 F.3d 282, 288-89 (2d Cir. 2010) (alter ego theory for employer's withdrawal liability under 29 U.S.C. §§ 1381(a), 1383(a)); Romita v. Anchor Tank Lines, LLC, No. 11 cv 9641 (DAB), 2014 WL 1092867, at *4-*6 (S.D.N.Y. Mar. 17, 2014) (successor liability for predecessor's failure to make required contributions to the plan). But no employer liability claim is asserted here, and none would fit the facts of this case as pled. There is no challenge to the dissolution and liquidation of the Plan nor a claim that it was unfunded at the time of

---

[3] Judge Schofield ably summarized the ERISA statute of limitations for breach of fiduciary duty as the earliest of three dates: "The first date 'is six years from the date of the last action that was part of the breach.' The second date is 'three years, applicable and beginning when a putative plaintiff has 'actual knowledge' of the violation . . . .' The third date—six years from plaintiffs' discovery of the breach—applies only where 'a fiduciary: (1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; or (2) engaged in acts to hinder the discovery of a breach of fiduciary duty.'" Demopoulos v. Anchor Tank Lines, LLC, 117 F. Supp. 3d 499, 508 (S.D.N.Y. 2015) (citations omitted).

dissolution. As noted, TBWA does not dispute for the purpose of this motion that it is successor or alter ego of Chiat\Day as Plan administrator. But sued only in its capacity as Plan administrator under section 502(a)(1), neither Chiat\Day nor its arguable successor, TBWA, has liability beyond the assets of the Plan.

Any judgment against TBWA as Plan administrator would be a judgment against the Plan itself. Manginaro, 21 F. Supp. 2d at 301 ("Although a trustee can be sued in his official capacity, such suits are treated as suits against the plan."); see also Chapro v. SSR Realty Advisors, Inc. Severance Plan, 351 F. Supp. 2d 152, 155 (S.D.N.Y. 2004) (same, citing Manginaro). Friedman argues that because section 502(d)(2) refers to "enforceab[ility]" of a "money judgment," he should be permitted to obtain a money judgment against TBWA, in its capacity as administrator, which would effectively be a judgment against the Plan itself, even though the parties agree that the Plan no longer exists and has been liquidated. In a letter opposing TBWA's proposed summary judgment motion, Friedman argued that TBWA's motion was "premature" as it raised an enforcement question. (Doc 70 at 2.) Friedman stated that once he "secures his judgment, he will, if necessary, avail himself of Fed. R. Civ. P. 69 to enforce his judgment . . . ." (Id.) TBWA fears that Friedman will pursue this litigation against TBWA in its capacity as Plan administrator, and then use post-judgment enforcement proceedings to secure a monetary judgment from TBWA in its individual capacity. (Doc 71 at 1-2.) As will be shown, Friedman may not pursue a claim against another person (or entity) in an individual capacity, including on successor liability or alter ego theories, through post-judgment enforcement proceedings in federal or state court. An action must be pursued directly under ERISA.

Federal post-judgment proceedings may not be utilized to enforce ERISA-based liability against another person on successor liability or alter ego-type theories. In Peacock v. Thomas, 516 U.S. 349, 351 (1996), the Supreme Court considered whether a judgment under ERISA may be enforced in a subsequent federal proceeding against another person not otherwise liable for the judgment, based on an independent theory of liability. Id.  It squarely held that claims of veil piercing, post-judgment fraudulent conveyance, and civil conspiracy may not be raised against another party in an ancillary judgment enforcement proceeding. Id. at 358. The Court concluded that the district court lacked subject matter and ancillary jurisdiction over the subsequent action seeking to enforce the ERISA judgment because, inter alia, it was "founded upon entirely new theories of liability." Id. at 354, 358; see IFC Interconsult, AG v. Safeguard Int'l Partners, LLC., 438 F.3d 298, 312 (3d Cir. 2006) ("Veil-piercing [in the ERISA context] does not make a party secondarily liable. Rather, it collapses corporate distinctions to make for joint primary liability."); see also Romita v. Anchor Tank Lines, LLC, No. 11 Civ. 9641 (DAB), 2013 WL 432903, at *3 (S.D.N.Y. Feb. 1, 2013) ("Although Plaintiffs' claim is one of successor liability, and not veil-piercing, the strictures of Peacock apply.").

Nor may an ERISA judgment be enforced in state court based on such theories. Generally, federal money judgments may be enforced in any state court. 28 U.S.C. § 1962; N.Y. CPLR § 5018(b) (duly filed federal judgment of "the same effect as a judgment entered in the supreme court within the county."). But ERISA's preemption of state law is broad: it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a); see Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987) ("The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion

that ERISA's civil enforcement remedies were intended to be exclusive."). State enforcement proceedings imposing ERISA-based successor or alter ego liability on a third person or entity in its individual capacity would be inconsistent with ERISA preemption.

C. Redressability

As noted, Friedman affirmatively asserts in his submissions that the Plan "has been liquidated and dissolved and is no longer a valid subsisting juridical entity." (Pl. 56.1 ¶ 15; Doc 68; Doc 79 at 5.) Given this concession, there is no possibility of enforcing a judgment against TBWA as Plan administrator, nor, as demonstrated, against any other person. TBWA argues that Freidman's single claim is, therefore, not redressable.

In order to meet the Article III standing requirement, a party seeking to establish federal jurisdiction must demonstrate: (1) injury in fact, (2) "a causal connection between the injury and the conduct complained of," and (3) redressability. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). To establish redressability, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 560 (citation omitted); see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 107 (1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."); Coal. of Watershed Towns v. U.S. E.P.A., 552 F.3d 216, 218 (2d Cir. 2008) (per curiam) (quoting W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 106-107 (2d Cir. 2008)) ("Redressability is the 'non-speculative likelihood that the injury can be remedied by the requested relief.'"). The Court concludes that Friedman's claim is not redressable in this action.

Friedman seeks a judgment establishing the liability of TBWA as Plan administrator. There is no dispute that the Plan has no assets to distribute to Friedman. It has been "liquidated and dissolved." (Doc 68.) Friedman speculates that there may be some assets traceable to the Plan that are controlled by TBWA in its individual capacity. (Doc 79 at 25.) At the summary judgment stage, this allegation, raised in his brief in opposition to the motion and without any supporting evidence, is insufficient to meet the redressability requirement. Lujan, 504 U.S. at 561. Thus, it is not "likely" that proceeding to trial and receiving a favorable decision from this Court would redress the wrong of which he complains. See, e.g., New York Coastal P'ship, Inc. v. U.S. Dep't of Interior, 341 F.3d 112, 116-17 (2d Cir. 2003) (affirming district court's grant of defendants' motion to dismiss, plaintiffs lacked standing where the court could "only speculate whether the remedy they seek would redress their purported injuries."); Papazian v. Sony Music Entm't, No. 16 cv 7911 (RJS), 2017 WL 10154498, at *2 (S.D.N.Y. Nov. 22, 2017) (Sullivan, J.) (copyright infringement claim not redressable because relief sought would not reimburse plaintiff for losses caused by past infringements); see also Walker v. Cox, No. 95 cv 1219, 1999 WL 294723, at *4 (E.D.N.Y. Mar. 17, 1999) (Nickerson, J.) ("A favorable decision for plaintiff would not 'likely' redress her alleged injury because plaintiff would still face eviction due to unauthorized occupancy."). Because Friedman has failed to come forward with evidence to support a non-speculative likelihood that the wrong of which he complains may be remedied through this action, the claim must be dismissed for lack of redressability.

CONCLUSION

For the reasons set forth above, TBWA's motion for summary judgment is GRANTED. The Clerk is directed to terminate the motion (Doc 74), enter final judgment, and close the case.

- 16 -

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated:  New York, New York
        May 14, 2020